**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

-------------------------------------------------------------x

THE SPARTA GROUP, INC.,

        Plaintiff,

        v.

MORGAN STANLEY SMITH BARNEY LLC,

        Defendant.

-------------------------------------------------------------x

Civil Action No. 10-5508 (DMC)

Return Date: January 18, 2011

ORAL ARGUMENT REQUESTED

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MORGAN STANLEY
SMITH BARNEY LLC'S MOTION FOR SUMMARY JUDGMENT**

---

**MARINO, TORTORELLA & BOYLE, P.C.**
**437 Southern Boulevard**
**Chatham, New Jersey 07928-1488**
**Tel:  (973) 824-9300**
**Fax: (973) 824-8425**
*Counsel for Defendant*
*Morgan Stanley Smith Barney, LLC*

On the Brief:

    Kevin H. Marino
    John A. Boyle
    Roseann B. Dal Pra

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

LEGAL ARGUMENT....................................................................................................... 7

I.    LEGAL STANDARD ............................................................................................... 7

II.   THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE
      BECAUSE THERE IS NO GENUINE DISPUTE THAT PLAINTIFF
      CANNOT RECOVER ACTUAL DAMAGES, TREBLE DAMAGES,
      MSSB'S PROFITS OR ATTORNEYS' FEES UNDER FEDERAL OR
      STATE LAW OF UNFAIR COMPETITION. ................................................. 8

      A.   The Record Evidence Establishes Beyond Dispute That Plaintiff May Not
           Recover Actual Damages Or Profits Because MSSB's Brief Use Of The
           Name "The Sparta Group at Morgan Stanley Smith Barney" Caused No
           Actual Confusion Or Injury To Plaintiff and Resulted In No Profits to MSSB. ........ 10

      B.   The Undisputed Record Evidence Establishes That Plaintiff is Not Entitled To
           Treble Damages. ......................................................................................... 14

      C.   The Undisputed Record Evidence Establishes That Plaintiff is Not Entitled To
           Attorneys' Fees. .......................................................................................... 15

CONCLUSION.................................................................................................................. 18

# **TABLE OF AUTHORITIES**

## **Cases**

Bracco Diagnostics, Inc. v. Amersham Health, Inc.,
    627 F. Supp.2d 384 (D.N.J. 2009) ............................................ 10

Caesars World, Inc. v. Venus Lounge, Inc.,
    520 F.2d 269 (3d Cir. 1975) ................................................ 9, 10, 11, 14

Century 21 Frontier v. Arch Ins. Group,
    No. 2:10-cv-1997, 2010 U.S. Dist. LEXIS 112588 (D.N.J. Oct. 21, 2010) ............................. 7

Conoshenti v. Public Serv. Elec. & Gas Co.,
    364 F.3d 135 (3d Cir. 2004) ............................................ 12

Electronics Corp. of Am. v. Honeywell, Inc.,
    358 F. Supp. 1230 (D.Mass. 1974) ............................................ 11

Eli Lilly and CO. v. Roussel Corp.,
    23 F. Supp.2d 460 (D.N.J. 1998) ............................................ 10

Ferrero U.S.A., Inc. v. Ozark Trading, Inc.,
    952 F.2d 44 (3d Cir. 1991) ................................................ 15, 17, 18

Formosa Plastics Corp. v. Ace Am. Ins. Co.,
    No. 06-5055, 2010 U.S. Dist. LEXIS 119382 (D.N.J. Nov. 9, 2010) ....................................... 8

G.H. Mumm Champagne v. Eastern Wine Corp.,
    142 F.2d 499 (2d Cir. 1944) ............................................ 11

Green v. Fornario,
    486 F.3d 100 (3d Cir. 2007) ............................................ 15

Hersh v. Allen Prods. Co.,
    789 F.2d 230 (3d Cir. 1986) ............................................ 7

Hindu Incense v. Meadows,
    692 F.2d 1048 (6th Cir. 1982) ............................................ 18

Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.,
    502 F.3d 504 (6th Cir. 2007) ............................................ 13

M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,
    205 F. Supp.2d 306 (D.N.J. 2002) ............................................ 10

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ............................................ 8

Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.,
    149 F.3d 722 (7th Cir. 1998) ............................................ 9

Santiago v. County of Passaic,
    No. A-3599-06T1, 2009 N.J. Super. Unpub. LEXIS 441 (App. Div. Feb. 27, 2009) ............. 12

Serbin v. Bora Corp.,
  96 F.3d 66 (3d Cir. 1996) ........................................................................ 8

SK&F, Co. v. Premo Pharm. Labs., Inc.,
  625 F.2d 1055 (3d Cir. 1980) ................................................................ 10

Strike It Rich, Inc. v. Jos. Schlitz Brewing Co.,
  505 F. Supp. 89 (D.D.C. 1980) .............................................................. 14

The Road Dawgs Motorcycle Club of the U.S., Inc. v. "Cuse" Road Dawgs, Inc.,
  679 F. Supp. 2d 259 (N.D.N.Y. 2009) ................................................... 11

Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.,
  50 F.3d 189 (3d Cir. 1995) .................................................................... 12

VIP Foods, Inc. v. Vulcan Pet, Inc.,
  675 F.2d 1106 (10th Cir. 1982) ...................................................... 17, 18

Web Printing Controls Co., Inc. v. Oxy-Dry Corp.,
  906 F.2d 1202 (7th Cir. 1990) ...................................................... 10, 13

**Statutes**

15 U.S.C. § 1117 ...................................................................................... 17

15 U.S.C. § 1117(a) ......................................................................... 9, 14, 15

15 U.S.C. § 1125(a) .......................................................................... passim

N.J.S.A. § 56:4-1 ................................................................................. 9, 10

N.J.S.A. § 56:4-2 ................................................................................. 9, 10

**Rules**

Fed. R. Civ. P. 56 ....................................................................................... 7

Fed. R. Civ. P. 56(a) .................................................................................. 7

Fed. R. Civ. P. 56(c)(2) ............................................................................ 12

Fed. R. Civ. P. 56(c)(4) ............................................................................ 12

Fed. R. Civ. P. 56(e)(2) .............................................................................. 8

Fed. R. Evid. 56(c)(1)(B) ......................................................................... 12

Fed. R. Evid. 802 ..................................................................................... 12

## <u>PRELIMINARY STATEMENT</u>

Defendant Morgan Stanley Smith Barney, LLC ("MSSB" or "Defendant") respectfully submits this memorandum of law and the accompanying Certification of John A. Boyle (the "Boyle Cert.") in support of its motion for summary judgment dismissing Plaintiff's Complaint in its entirety.  On October 25, 2010, Plaintiff The Sparta Group, Inc. ("Plaintiff" or "Sparta Group") filed the Complaint in this action under the Lanham Act and its New Jersey state equivalent, together with an application for an order to show cause seeking a preliminary injunction barring MSSB from using the name "The Sparta Group."  Plaintiff's filing was animated by a group of financial professionals employed by MSSB and working out of offices located in Morristown, New Jersey who had recently begun using the name "The Sparta Group at Morgan Stanley Smith Barney."

Less than twenty-four hours after service of Plaintiff's complaint and application for an order to show cause, MSSB informed both Plaintiff and the Court on October 26, 2010 that it had changed the name of the group of professionals located in Morristown and stopped using the name "The Sparta Group at Morgan Stanley Smith Barney."  Ultimately, after MSSB further represented (at Plaintiff's request) that it would not in the future use the name "Sparta Group" in a manner that might infringe on Plaintiffs' rights and that all materials using the name "The Sparta Group at Morgan Stanley Smith Barney" had been destroyed, Plaintiff withdrew its request for preliminary injunctive relief.

But, despite the fact that MSSB agreed immediately upon receipt of the Complaint to stop using the name "The Sparta Group at Morgan Stanley Smith Barney," Plaintiff adamantly refuses to dismiss its Complaint.  In fact, Plaintiff has made clear that it intends to pursue an award of damages and attorneys' fees based on MSSB's brief and limited use of a name similar

to its own.  As demonstrated in detail below, however, the Court should grant summary judgment and dismiss Plaintiff's claims in their entirety because the record establishes beyond dispute that there is no basis on which Plaintiff could recover any form of monetary relief (whether actual damages, treble damages or MSSB's profits) or attorney's fees.  Specifically, the record establishes indisputably that MSSB's use of the name "The Sparta Group at Morgan Stanley Smith Barney" — use that spanned less than four months and involved the solicitation of less than twelve people, none of whom decided to do business with MSSB as of the October 26th name change — did not result in (1) any actual customer confusion; (2) any harm to Plaintiff; or (3) any gain by MSSB.  Accordingly, Plaintiff has no basis on which to recover from MSSB and its claims should be dismissed on summary judgment.

For the reasons outlined above and amplified below, the Court should grant MSSB's summary judgment motion and dismiss Plaintiff's claims in their entirety and with prejudice.

## STATEMENT OF FACTS

According to its Complaint, the Sparta Group "is engaged, inter alia, in the business of providing sports agent and representational services to major league and minor league baseball players throughout the United States and abroad."  (Complaint, ¶ 5.)  The Complaint also contends that Plaintiff "provides investment and financial advice to professional ballplayers, as well as coaches, sportscasters, and high net worth persons who are not involved in professional sports and reside in Northern New Jersey and elsewhere."  (Id., ¶ 6.)  As discussed further below, from July 2010 until the morning of October 26, 2010, a group of financial professionals employed by MSSB and working out of offices located at 1200 Mt. Kemble Avenue, Morristown, New Jersey 07960 (the "Group") was referred to as "The Sparta Group at Morgan Stanley Smith Barney."  (Certification of Brian J. Burns, dated October 28, 2010 (the "First

Burns Certification"), ¶¶ 2-3 (Boyle Cert., Ex. 1); Second Certification of Brian J. Burns, dated November 9, 2010 (the "Second Burns Certification"), ¶ 3 (Boyle Cert., Ex. 2).)

By letter dated October 7, 2010 (the "Cease and Desist Letter"), Sohail Shahpar, Esq., Plaintiff's in-house legal counsel, advised MSSB that (a) Plaintiff had learned that "representatives of [MSSB's] business in the Bedminster and/or Morristown, New Jersey Branch Office have been using the name The Sparta Group in association with the marketing and sale of your products and services, as well as in printed sales and marketing materials"; and (b) Plaintiff's "use of the Sparta Group name for nearly 30 years in the field of representing professional athletes and financial services provides [Plaintiff] with certain property rights to the business name." (Certification of Mitchell Bompey, dated November 9, 2010 (the "Bompey Certification"), ¶ 4 & Ex. C (Boyle Cert., Ex. 3).) The Cease and Desist Letter expressed Plaintiff's opinion that MSSB's use of "The Sparta Group name" violated unidentified state and federal laws and thus requested that MSSB "Cease and Desist in any further use of The Sparta Group name in association with the marketing, sale, distribution, and identification of [MSSB's] products and services." (Id., ¶ 5.)

But, beyond indicating that Plaintiff had used the name "The Sparta Group" for nearly thirty years, the Cease and Desist Letter did not provide any details as to MSSB's alleged infringement of Plaintiff's rights. (Id.) Most notably, the Cease and Desist Letter did not mention that, as the Complaint and Plaintiff's withdrawn application for injunctive relief allege, Eric Reese ("Reese"), an employee of MSSB and a member of the Group, had been a summer intern for Plaintiff in 2009 and thus was aware of Plaintiff's business and name.[1] (Id., ¶ 7 & Ex. C; Declaration of Eugene J. Casaleggio ("Casaleggio Declaration"), ¶ 2 (Docket No. 1-7).)

---

[1] Reese, however, had absolutely no involvement with naming the Group. (First Burns Certification, ¶ 5 (Boyle Cert., Ex. 1).)

Further, the Cease and Desist Letter did not provide notice that on October 6, 2010, Plaintiff's Chief Financial Officer, William R. Boyd ("Boyd"), received a telephone call from a long-time acquaintance named Charles Savite ("Savite"), who relayed that he had received "an unsolicited call from a person claiming to be with The Sparta Group."  (Bompey Certification, ¶ 7 & Ex. C (Boyle Cert., Ex. 3); Declaration of William R. Boyd ("Boyd Declaration"), ¶ 9 (Docket No. 1-9).)  Significantly, Plaintiff's letter correctly acknowledged that "[i]t is possible that [MSSB] w[as] unaware of this conflict" between the Plaintiff's name and the "Sparta Group at Morgan Stanley Smith Barney."  (Bompey Certification, ¶ 8 & Ex. C (Boyle Cert., Ex. 3).)

On October 12, 2010, MSSB responded to Plaintiff's Cease and Desist Letter.  (First Burns Certification, Ex. A, 10/12/2010 letter from Mitchell Bompey to Sohail Shapar (the "October 12th Letter") (Boyle Cert., Ex. 1).)  At the time of that response, MSSB was not aware of Savite's alleged "confusion" as to the affiliation of the individual who had contacted him.  (Bompey Certification, ¶ 9 (Boyle Cert., Ex. 3).)  In fact, MSSB was not aware of Savite's alleged confusion until it received Plaintiff's October 25, 2010 application for preliminary injunctive relief in this matter.  (Id.)  Had Plaintiff disclosed in the Cease and Desist Letter that (a) Savite was solicited by a member of the Group and was allegedly unsure as to any connection between that individual and Plaintiff; and (b) Reese had formerly been employed by Plaintiff and was thus aware of its name and business, MSSB would have immediately changed the name of the Group upon receipt of the Cease and Desist Letter.  (Id., ¶ 10.)

But, because Plaintiff did not make MSSB aware of Savite's communication with Boyd or Reese's affiliation with Plaintiff, MSSB's October 12th Letter instead explained that MSSB has guidelines and policies in place to eliminate the likelihood of consumer confusion by requiring that any group name, including "The Sparta Group at Morgan Stanley Smith Barney,"

be used always in conjunction with the MSSB name – i.e., "The Sparta Group at Morgan Stanley Smith Barney."  (First Burns Certification, Ex. A (Boyle Cert., Ex. 1).)  MSSB's letter further explained that group names like "The Sparta Group at Morgan Stanley Smith Barney" are merely descriptive of the residences of the financial professionals in the group; in this case, several of the financial professionals in the Group live in Sparta Township, New Jersey.  (Id.)  Thus, MSSB believed that those factors, and others mentioned in the letter, negated any claim of infringement and thus declined to terminate its use of the name "The Sparta Group at Morgan Stanley Smith Barney."  (Id.)  In conclusion, MSSB invited Plaintiff to call to discuss the matter further.  (Id.)

Rather than call MSSB to provide greater detail as to the alleged infringement or to further discuss an amicable resolution, Plaintiff filed the Complaint and an Order to Show Cause application in this Court on October 25, 2010, seeking to restrain MSSB from using the name "The Sparta Group."  (See Order to Show Cause (Docket No. 1-2).)  In light of Plaintiff's allegations as to Mr. Savite's purported "confusion" and Reese's former affiliation with Plaintiff, on the morning after Plaintiff filed and served the Order to Show Cause application, the Group changed its name, effective immediately, to the "Burns-Marchiano Group of Morgan Stanley Smith Barney."  (Certification of Kevin H. Marino, dated October 26, 2010 (the "Marino Certification") Ex. A, 10/26/2010 Brian Burns email (Boyle Cert., Ex. 4); First Burns Certification, ¶ 2 (Boyle Cert., Ex. 1).)  By letter dated October 26, 2010, counsel for MSSB advised the Court and Plaintiff's counsel of the name change and stated that Plaintiff's application for injunctive relief should therefore be denied as moot.  (10/26/2010 letter from Kevin H. Marino to Hon. Dennis M. Cavanaugh, U.S.D.J. (Boyle Cert., Ex. 4).).

In response, on October 27, 2010, Plaintiff's counsel wrote to the Court stating that he did not believe that the name change mooted the request for a preliminary injunction because

MSSB did not promise that it would never use the name in the future.  (10/27/2010 letter from Charles Quinn to Judge Cavanaugh (Docket No. 3).)  Thus, MSSB augmented its position as to the mootness of the requested injunctive relief by submitting the First Burns Certification, which states, in part:

> To be clear, I hereby represent that neither MSSB nor the Group has any intention to and will not use the name "The Sparta Group at Morgan Stanley" or any similar name in a trademark manner which might reasonably infringement any rights Plaintiff may have in "The Sparta Group" in the future.
>
> I further hereby represent that MSSB and the Group have destroyed all marketing and sales materials, including all brochures, business cards, and letterhead, bearing the name "The Sparta Group at Morgan Stanley Smith Barney."  All members of the Group have revised their e-mail signature blocks to remove any reference to "The Sparta Group."

(First Burns Certification, ¶¶ 7-8 (Boyle Cert., Ex. 1).)  Based on Burns's representations, Plaintiff's counsel advised the Court that Plaintiff had "obtained all it sought in its application for preliminary injunctive relief, and, therefore, withdrawals that motion."  (10/29/2010 letter from Charles Quinn to Judge Cavanaugh (Docket No. 8).)  Plaintiff's counsel, however, further advised that Plaintiff will "continue to press it claims for damages (both compensatory and exemplary) and attorneys' fees as Mr. Burns' protestations of innocence are unpersuasive." (Id.).

As noted above, the Group first began using the name "The Sparta Group at Morgan Stanley Smith Barney" in July 2010 and ceased using it in any fashion on the morning of October 26, 2010.  (Second Burns Certification, ¶¶ 3-4 (Boyle Cert., Ex. 2).)  Between July 2010 and October 26, 2010, representatives of the Group contacted less than twelve individuals using the "Sparta Group at Morgan Stanley Smith Barney" name.  (Id., ¶ 4.)  Representatives of the Group contacted those individuals because they possessed the characteristics of the Group's

targeted potential clients.  (<u>Id.</u>)  None of the individuals contacted mentioned Plaintiff or gave any indication that they were confused about the fact that it was a group of financial professionals from MSSB that was contacting them, rather than Plaintiff's business. (<u>Id.</u>)  More importantly, none of the business pitches made using the name "Sparta Group at Morgan Stanley Smith Barney" proved fruitful, as none of the solicited individuals decided to do business with or obtain services from MSSB prior to the October 26th name change of the Group.  (<u>Id.</u>, ¶ 5.) Since that date, all solicitations have been made using the Group's new name.  (<u>Id.</u>)

## <u>LEGAL ARGUMENT</u>

### I.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 mandates that the court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis supplied).[2] In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts in favor of the non-moving party.  <u>Hersh v. Allen Prods. Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  <u>Century 21 Frontier v. Arch Ins. Group</u>, No. 2:10-cv-1997, 2010 U.S. Dist. LEXIS 112588, at **3-4 (D.N.J. Oct. 21, 2010) (Cavanaugh, J.)  Once that burden has been met, however, it is incumbent upon the non-moving party "'to set out specific facts showing a genuine

---

[2] Amendments in 2010 restored the term "shall" to Rule 56 "to express the direction to grant summary judgment."  Fed. R. of Civ. P. 56, Notes of Advisory Committee on 2010 amendments. Although the amendments revised the procedures for presenting and deciding summary judgment motions, the standard for granting summary judgment remains unchanged.  <u>Id.</u> The amendments did "not affect continuing development of the decisional law construing and applying" the phrases that "there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law."  <u>Id.</u>

issue for trial.'" Id. at *4 (quoting Fed. R. Civ. P. 56(e)(2)).  This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts.'"  Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  Indeed, unsupported allegations in a legal memorandum or a pleading are insufficient to repel summary judgment.  Id. at *5.  Thus, if the non-movant's evidence on any essential element of a claim is merely "colorable" or is "not significantly probative," the court should grant summary judgment in favor of the moving party.  Formosa Plastics Corp. v. Ace Am. Ins. Co., No. 06-5055, 2010 U.S. Dist. LEXIS 119382 (D.N.J. Nov. 9, 2010).  In other words, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Serbin v. Bora Corp., 96 F.3d 66, 69 n.2 (3d Cir. 1996).

II.    **THE COURT SHOULD DISMISS THE COMPLAINT WITH PREJUDICE BECAUSE THERE IS NO GENUINE DISPUTE THAT PLAINTIFF CANNOT RECOVER ACTUAL DAMAGES, TREBLE DAMAGES, MSSB'S PROFITS OR ATTORNEYS' FEES UNDER FEDERAL OR STATE LAW OF UNFAIR COMPETITION.**

In its Complaint, Plaintiff asserts unfair competition claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),[3] and its state counterpart, the New Jersey Fair Trade Act, N.J.S.A. §

---

[3] Section 43(a) provides, in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[ ]

. . . .

56:4-1.  (Compl., Counts I and II.)  Even assuming, for purposes of this motion only, that Plaintiff can establish a violation of these statutes (which it cannot),[4] the Complaint should be dismissed because Plaintiff cannot recover any of the types of monetary relief it seeks in the Complaint: damages, treble damages, MSSB's profits or attorneys' fees.

Section 35(a) of the Lanham Act provides that the Court may, subject to principles of equity, award monetary relief to a plaintiff who has proven a violation of § 43(a) of the Lanham Act in the form of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a); see also Caesars World, Inc. v. Venus Lounge, Inc., 520 F.2d 269, 272-73 (3d Cir. 1975).  The section also provides that "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  Id.  Further, § 35(a) provides that "[t]he court in *exceptional cases* may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a)  (emphasis supplied).  The New Jersey Fair Trade Act, in turn, provides that anyone who violates § 56:4-2 is liable for "all damages, directly or indirectly caused, to the maker by such practices, which damages may be trebled in the discretion of the

---

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

[4] Plaintiff never alleges in the Complaint that it registered the mark "The Sparta Group" with the United States Patent and Trademark Office.  Indeed, a search of the mark "The Sparta Group" on the agency's website yielded no results and a search of the mark "Sparta Group" showed that the name was registered on May 11, 1999 to Virtual Wall Street, Inc., a California corporation engaged in providing computer services, but that the registration was canceled on February 18, 2006.  (Boyle Cert., Ex. 5, page from US Patent and Trademark Office website.)  (Ironically, it appears that Plaintiff itself engaged in trademark infringement for a period of time.)  Under such circumstances, the burden is on Plaintiff to establish that it is entitled to protection under § 43(a) of the Lanham Act.  See Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 727 (7th Cir. 1998).

court."  N.J.S.A. § 56:4-2.[5]   Unlike the Lanham Act, the New Jersey Fair Trade Act does not

provide for recovery of costs, defendant's profits or attorney's fees. As demonstrated below, the

indisputable record evidence establishes that none of the forms of relief provided by the Lanham

Act or the New Jersey Fair Trade Act is available to Plaintiff.

> **A. The Record Evidence Establishes Beyond Dispute That Plaintiff May Not Recover Actual Damages Or Profits Because MSSB's Brief Use Of The Name "The Sparta Group at Morgan Stanley Smith Barney" Caused No Actual Confusion Or Injury To Plaintiff and Resulted In No Profits to MSSB.**

In the context of the Lanham Act and unfair competition, courts require a higher level of

proof of damages for recovery of monetary relief than for injunctive relief.  Bracco Diagnostics,

Inc. v. Amersham Health, Inc., 627 F. Supp.2d 384, 480 (D.N.J. 2009).   Thus, "a plaintiff

seeking money damages must show more than a mere presumption of actual customer

confusion." Id. at 481.   Rather, the plaintiff must show "actual confusion."   Web Printing

Controls Co., Inc. v. Oxy-Dry Corp., 906 F.2d 1202, 1204-05 (7th Cir. 1990).  As the Seventh

Circuit has explained:

> A plaintiff wishing to recover damages for a violation of the Lanham Act must prove the defendant's confusion among consumers of the plaintiff's product and, as a result, that the plaintiff suffered actual injury, i.e., a loss of sales, profits, or present value (good will).

Web, 906 F.2d at 1204-05.  The same holds true for recovery of the alleged infringer's profits.

The Third Circuit in Caesars recognized that "'[u]nless there is at least some evidence of harm

---

[5] The New Jersey Fair Trade Act provides: "No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals."   N.J.S.A. § 56:4-1.  Section 43(a) of the Lanham Act is considered the equivalent to the New Jersey Fair Trade Act and thus the two are treated as the same for analytical purposes.  SK&F, Co. v. Premo Pharm. Labs., Inc., 625 F.2d 1055, 1066 (3d Cir. 1980); M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc., 205 F. Supp.2d 306, 322 (D.N.J. 2002); Eli Lilly and CO. v. Roussel Corp., 23 F. Supp.2d 460, 495-96 (D.N.J. 1998).

arising from defendant's violation, a court may not award a money judgment based on profits or damages.'" 520 F.2d at 274 (quoting Electronics Corp. of Am. v. Honeywell, Inc., 358 F. Supp. 1230, 1233 (D.Mass. 1974)). Similarly, the Second Circuit has explained that "[i]t is of course true for infringement of a trade-mark or for unfair competition, it is necessary to show that buyers, who wished to buy the plaintiff's goods, have been actually misled into buying the defendant's." G.H. Mumm Champagne v. Eastern Wine Corp., 142 F.2d 499, 501 (2d Cir. 1944).

Moreover, the record must contain evidence of actual damage or actual profit in dollars and cents: "[i]f the record in the district court contains no evidence of actual damage or actual profit in dollars and cents no monetary award may be made under § 35 of the Lanham Act. And the trademark owner must be content with injunctive relief." Caesars, 520 F.2d at 274; see also The Road Dawgs Motorcycle Club of the U.S., Inc. v. "Cuse" Road Dawgs, Inc., 679 F. Supp. 2d 259, 293 (N.D.N.Y. 2009) ("Generally, to receive compensation, a plaintiff must demonstrate with specificity that a specific injury or profitable infringement occurred. [Citations omitted.] In other words, the discretionary award of damages based on either harm suffered by plaintiff or defendant's profits must rest on an evidentiary basis that an injury or profitable infringement has already been suffered."). Applying those principles here, the Court must grant summary judgment on the issues of actual damages and profits because the record establishes beyond dispute that no customer of Plaintiff was confused or misled, Plaintiff suffered no harm and MSSB received no benefit by virtue of the Group's use of the name "The Sparta Group at Morgan Stanley Smith Barney."

As an initial matter, where, as here, the opposing party bears the ultimate burden of proof on an issue at trial, the moving party discharges its burden on summary judgment by "pointing

out" to the court that there is an absence of evidence supporting the nonmoving party's case. Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004), superseded by statute on other grounds as stated in Santiago v. County of Passaic, No. A-3599-06T1, 2009 N.J. Super. Unpub. LEXIS 441 (App. Div. Feb. 27, 2009); see also Fed. R. Evid. 56(c)(1)(B) (a party asserting that a fact cannot be disputed must support the assertion by, *inter alia*, showing "that an adverse party cannot produce admissible evidence to support the fact").  Here, Plaintiff cannot carry its ultimate burden of proving (a) actual confusion; (b) loss of sales, profits, or good will; or (c) any benefit or profits received by MSSB as a result of the Group's use of the name "The Sparta Group at Morgan Stanley Smith Barney" during the limited time period in which it was used — less than four months from July 2010 until October 26, 2010.

The only "proof" of confusion is a single anecdotal account by Plaintiff's CFO, Boyd, that he received a telephone call from Savite, who told him that he received a call from someone claiming to be with the Sparta Group; Savite asked Boyd whether that person worked for Plaintiff.   (Boyd Decl., ¶ 9 (Docket No. 1-9).)   Preliminarily, Boyd's story constitutes inadmissible hearsay, which cannot be used to avoid summary judgment or to support a claim of actual confusion.  See Fed. R. Evid. 802 (hearsay is generally inadmissible); Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd., 50 F.3d 189, 212 (3d Cir. 1995) ("the district court erred in relying on hearsay evidence for the proposition that there was actual confusion"); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be *admissible in evidence*.") (emphasis supplied); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be *admissible in evidence*, and show that the affiant or declarant is competent to testify on the matters stated.") (emphasis supplied).  Moreover, even

if Boyd's account were admissible, it alone is insufficient to support a claim of actual confusion. See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 502 F.3d 504, 519 (6th Cir. 2007) (district court did not err in declining to afford substantial weight to stories that lacked the details necessary to establish actual confusion and were sufficiently few in number that they did little to support the plaintiff's claim of actual confusion).

On a substantive level, Boyd's anecdote about Savite does not constitute an example of consumer confusion for two reasons.  First, by Plaintiff's own admission, Savite is not a customer of Plaintiff, but rather simply a long-time acquaintance of Boyd.  (Boyd Decl., ¶ 9 (Docket No. 1-9).)  As a result, whether or not he was confused as to the distinction between Plaintiff and the Group is of no moment.  Web, 906 F.2d at 1204-05 ("A plaintiff wishing to recover damages for a violation of the Lanham Act must prove the defendant's confusion among consumers of the plaintiff's product.")  Second, Boyd's Declaration makes clear that Savite was not confused or misled into doing business with the Group thinking it was Plaintiff.  To the contrary, after being contacted by "a person claiming to be with the Sparta Group," Savite contacted Boyd to ascertain whether the individual was associated with Plaintiff.  (Boyd Decl., ¶ 9 (Docket No. 1-9).) Far from being confused, Savite clearly understood at the time of the call that the individual might not be associated with Plaintiff and confirmed that understanding with Boyd.

More significantly, the record evidence establishes beyond dispute that Plaintiff lost no customers (and thus suffered no harm) and MSSB received no benefit or profit from its brief use of the name "The Sparta Group at Morgan Stanley Smith Barney."  As the Second Burns Certification makes clear, in the less than four months (from July through October 2010) in which the name was used, representatives of the Group contacted less than twelve individuals

using the "Sparta Group at Morgan Stanley Smith Barney" name.  (Second Burns Certification, ¶¶ 3-4 (Boyle Cert., Ex. 2).)  Not one of the contacted individuals mentioned Plaintiff or gave any indication that they were confused about the fact that it was a group of financial professional from MSSB that was contacting them, rather than Plaintiff's business. (Id., ¶ 4.)  Critically, none of those solicitations was successful, as none of the individuals contacted using the name "Sparta Group at Morgan Stanley Smith Barney" decided to do business with or obtain services from MSSB prior to the October 26th name change of the Group.  (Id., ¶ 5.)  In other words, the Group did not obtain and Plaintiff did not lose any clients or business as a result of the Group's use of the name.

In sum, it is undisputed that Plaintiff suffered no harm, MSSB reaped no benefit and there was no actual consumer confusion from the Group's use of the name "Sparta Group at Morgan Stanley Smith Barney."  As a result, the Court should grant summary judgment in favor of MSSB on the issue of actual damages and disgorgement of MSSB's profits.  See Strike It Rich, Inc. v. Jos. Schlitz Brewing Co., 505 F. Supp. 89, 91 (D.D.C. 1980) (granting partial summary judgment on the issue of damages where plaintiff repeatedly failed to provide either the Court or the defendant with any proof of damage that could be tested or studied).

**B. The Undisputed Record Evidence Establishes That Plaintiff is Not Entitled To Treble Damages.**

As noted above, the Lanham Act provides that "in assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  15 U.S.C. § 1117(a).  The Third Circuit, however, has held that "[t]his sentence cannot be relied upon to sustain an award of compensatory damages or the award of exemplary damages, since it assumes an evidentiary basis for the award of some actual damages."  Caesars, 520 F.2d at 273.  Where actual damages

14

are not found, the court may not award treble damages because, obviously, "[t]hree times zero is zero." Id.

As explained above, Plaintiff cannot prove that it sustained any actual damages. Accordingly, because "[t]hree times zero is zero," the Court should grant summary judgment in MSSB's favor on the issue of treble damages.

### C. The Undisputed Record Evidence Establishes That Plaintiff is Not Entitled To Attorneys' Fees.

The Lanham Act permits a court to award attorneys' fees only in "exceptional cases." 15 U.S.C. § 1117(a). The determination as to whether a case is "exceptional" requires a two-step inquiry. Green v. Fornario, 486 F.3d 100, 103 (3d Cir. 2007). First, the court must decide whether the defendant engaged in culpable conduct. Id. Bad faith, fraud, malice and knowing infringement are examples of culpable conduct that would support an award of attorneys' fees. Id. Culpable conduct may also relate to the manner in which the unsuccessful party handled itself during litigation.[6] Id.; see also Ferrero U.S.A., Inc. v. Ozark Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991) ("[A] district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as 'exceptional.'"). Second, if the court determines that the defendant's conduct was culpable, the court must determine if the circumstances of the case are sufficiently "exceptional" to warrant a fee award. Green, 486 F.3d at 103. A court may not award fees absent a finding of culpable conduct, but it may decline to grant the award based on the totality of the circumstances. Id. at 103-04.

---

[6] Plaintiff bears the burden of proving culpable conduct as a necessary element of establishing eligibility for a fee award. Green, 486 F.3d at 104.

Based on the record evidence, it is beyond dispute that Plaintiff cannot carry its burden of proving that MSSB engaged in bad faith, fraud, malice, or knowing infringement or that this is an "exceptional" case warranting a fee award.  Plaintiff's conclusory allegation that the Group adopted the name "The Sparta Group at Morgan Stanley Smith Barney . . . as part of a deliberate plan to trade on The Sparta Group service mark and trade name and the good will associated with plaintiff's mark and name," (Compl., ¶ 15), is unsupported — and in fact contradicted — by the indisputable record evidence.  As explained in the First Burns Certification, "MSSB included the words "Sparta Group" in the Group's name solely because several members of the Group, including [Burns], reside in Sparta, New Jersey."  (First Burns Certification, ¶ 4 (Boyle Cert., Ex. 1).)   Indeed, the Group's brochure makes specific mention that three of its financial professionals reside in Sparta, New Jersey.  (Casaleggio Decl. (Docket No. 1-7), Ex. B, MSSB Brochure at 1 ("[Brian J. Burns" lives in Sparta, New Jersey with his wife and three children."); id. ("Michael [Marchiano] resides in Sparta, NJ with his wife Guili-Ann."); id. at 6 "Eric [Reese] resides in Sparta, New Jersey.").  MSSB also explained the reason for the choice of the Group's name to Plaintiff in its October 12th response to the Cease and Desist Letter:

> [G]roup names like The Sparta Group at Morgan Stanley Smith
> Barney are merely descriptive of the residence of the Financial
> Advisors in this group – in this case, all of the Financial Advisors
> live in Sparta Township, New Jersey.

(First Burns Certification, Ex. A, October 12th Letter (Boyle Cert., Ex. 1).)  Further, Reese informed one of Plaintiff's principals that (1) the Group was named "The Sparta Group at Morgan Stanley Smith Barney" because three members of the Group reside in Sparta; and (2) the name choice was purely a coincidence.  (Casaleggio Decl., Ex. A, 10/1/2010 e-mail from Reese to Casaleggio ("O yea, I just reread the brochure and because all 3 of us are from Sparta, they named our team The Sparta Group at Morgan Stanley Smith Barney . . . Coincidence.").  That

16

Reese was aware of Plaintiff does not compel a finding of culpable conduct on the part of MSSB because, as noted above, Reese "had absolutely no involvement with naming the Group." (First Burns Certification, ¶ 5 (Boyle Cert., Ex. 1).)

Nor does the fact that MSSB initially declined to comply with the Cease and Desist Letter render this an "exceptional" case. As detailed above, the Cease and Desist Letter did not provide notice that (a) Reese had formerly been employed by Plaintiff and was thus aware of its name and business; or (b) an individual allegedly solicited by a member of the Group called Plaintiff's CFO, Boyd, to question whether that person was affiliated with Plaintiff. (Bompey Certification, ¶¶ 6-7 & Ex. C (Boyle Cert., Ex. 3).) Had the Cease and Desist Letter disclosed those facts, MSSB would have immediately changed the name of the Group. (Id., ¶ 10.) Indeed, once MSSB became aware of these facts upon receipt of Plaintiff's Order to Show Cause application, it immediately changed the name of the Group, destroyed all marketing materials bearing the name, and vowed not to use the name again in the future. (Boyle Cert., Ex. 4; First Burns Certification, ¶¶ 7, 8 (Boyle Cert., Ex. 1).) Because Plaintiff failed to disclose Savite's conversation with Boyd and Reese' prior relationship with Plaintiff, MSSB believed in good faith that it had a right to use the name "The Sparta Group at Morgan Stanley Smith Barney" because its use of the words "Sparta Group" as a means to describe the residence of its financial professionals was protected as a fair use under applicable trademark law. (First Burns Certification, Ex. A, 10/12/2010 Letter from Bompey to Shahpar (Boyle Cert., Ex. 1).)

Further, one factor that courts deem relevant in declining to award attorneys' fees is the plaintiff's failure to show damages. Ferrero, 952 F.2d at 47; see also VIP Foods, Inc. v. Vulcan Pet, Inc., 675 F.2d 1106, 1107 (10th Cir. 1982) (finding case did not warrant an award of attorneys' fees under 15 U.S.C. § 1117 where the evidence showed and the court found that the

plaintiff had suffered no ascertainable damage or loss of profits because of defendant's use of the mark and because the court found that the defendant had no intent to deceive or confuse the public or to willfully infringe upon plaintiff's trademark); <u>Hindu Incense v. Meadows</u>, 692 F.2d 1048, 1052 (6th Cir. 1982) (finding it important that plaintiff admitted that there had been no loss of sales due to infringement and noting that "[s]uch a finding generally makes the case unexceptional for purposes of awarding fees under § 1117").  Thus, the fact that Plaintiff is unable to make a showing of any damages militates against finding this an "exceptional" case warranting a fee award.  <u>Ferrero</u>, 952 F.2d at 47; <u>see also</u> <u>VIP</u>, 675 F.2d at 1107; <u>Hindu Incense</u>, 692 F.2d at 1052.

Accordingly, because there is no genuine dispute that MSSB did not engage in culpable conduct or that this is not an "exceptional" case, summary judgment should be granted in MSSB's favor on the issue of attorneys' fees.

<strong><u>CONCLUSION</u></strong>

For the reasons stated above, the Court should grant summary judgment in favor of defendant Morgan Stanley Smith Barney, LLC, dismissing Plaintiffs' Complaint with prejudice.

Dated: December 15, 2010                    Respectfully submitted,

                                            MARINO, TORTORELLA & BOYLE, P.C.
                                            Attorneys for Defendant
                                            Morgan Stanley Smith Barney, LLC


                              BY:     /s/ Kevin H. Marino
                                      KEVIN H. MARINO