NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE SPARTA GROUP, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> MORGAN STANLEY SMITH BARNEY,: <br> LLC : <br> Defendant : <br> : | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action 10-5508 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for summary judgment by Morgan Stanley Smith Barney, LLC("Defendant") to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P.56, and cross-motion by The Sparta Group, Inc. ("Plaintiff") for summary judgment, or for a stay to conduct discovery pursuant to Fed. R. Civ. P. 56(d). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons stated herein, Plaintiff's motion pursuant to Fed. R. Civ. P. 56(d) is **granted**, and Plaintiff will be allowed to engage in limited discovery to be determined by Magistrate Judge Joseph A. Dickson in accordance with this Opinion. The Court **reserves** opinion on both Plaintiff and Defendant's motions for summary judgment pursuant to Fed. R. Civ. P. 56(a)**.**

I.   **BACKGROUND**

Plaintiff is a New Jersey Corporation with its principal place of business in Parsippany, New Jersey. Defendant is a Delaware limited liability company with its principal place of business in New York City. Plaintiff is engaged in the business of providing sports agent and representation services

1

to major league and minor league baseball players, as well as investment and financial advice to ballplayers, coaches, sportscasters and other high net worth individuals . The Sparta group was founded in 1980, and has continuously operated under that name ever since. According to the declaration of Eugene Casaleggio, Plaintiff's senior partner and director of player development, in the summer of 2009, Plaintiff hired Eric Reese, a former college baseball player whose father was an old friend of Mr. Casaleggio, as a summer intern. After Mr. Reese left Plaintiff's employ, he and Mr. Casaleggio remained in touch, and Mr. Casaleggio offered Mr. Reese "advice on career and professional matters." (Dec. Of Eugene Casaleggio, ECF Doc. 1-7, p.2 par. 3). By October 1, 2010 Mr. Reese apparently accepted a job with Defendant, and sent an e-mail to Mr. Casaleggio, the subject of which was "positioning myself with agents." Mr. Reese attached a copy of his "Team Brochure, " and mentioned that,  "O yea, I just reread the brochure and because all 3 of us are from Sparta, they named our team The Sparta Group at Morgan Stanley Smith Barney...Coincidence." (Exhibit A to Dec. Of Eugene Casaleggio, ECF. Doc 1-8).On October 6, 2010 Mr. William R. Boyd, Plaintiff's Chief Financial Officer,  received a phone call from a long term acquaintance, Mr. Charles Savite, who reported that he had received "an unsolicited call from a person claiming to be from The Sparta Group," but who did not, in fact, work for Plaintiff. (ECF Doc. 1-9, Dec. Of William R. Boyd). The next day, Mr. Sohail Shahpar, in-house legal counsel for Plaintiff, sent a letter to Defendant describing the alleged infringement and potential for confusion, and requesting that Defendant cease and desist from using the name The Sparta Group.(ECF Doc. 1-10, Ex. B to Boyd Dec.). On October 12, 2010 Defendant's attorney responded and did not indicate that Defendant was prepared to comply, or that Defendant believed itself to be infringing or creating confusion. On October 25, 2010 Plaintiff filed the instant law suit, requesting that Defendant be temporarily

restrained, and preliminarily and permanently enjoined from infringing Plaintiff's service mark and trade name. By October 29, 2010, Defendant ceased using Plaintiff's service mark and trade name, and agreed to destroy all promotional materials, etc., that used the name as well. Although Plaintiff's attorney reported to the Court on October 29, 2010 that "the Sparta Group has obtained all it sought in its application for preliminary injunctive relief, and, therefore, withdraws that motion," Plaintiff elected to continue to press for damages, profits, attorneys fees and costs.

## II.     LEGAL STANDARD

### A.     Summary Judgment

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009).  However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986).  "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c)." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

    B.    Lanham Act

15 U.S.C. § 1117(a), in addition to injunctive relief pursuant to 15 U.S.C. § 1116, 1117(a) provides in relevant part that:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a), (c), or (d) [15 U.S.C. § 1125(a), (c), or (d)],

or a willful violation under section 43(c) [15 U.S.C. § 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of section 29 and 32 [15 U.S.C. §§ 1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

As the Third Circuit held in 2009, "an accounting of an infringer's profits is available if the defendant is unjustly enriched, if the plaintiff has sustained damages, or if an accounting is necessary to deter infringement." *Marshak v. Treadwell,* 595 F.3d 478, 495 (3d Cir.2009). The seminal case on the subject, *Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 175 (3d Cir.2005), holds that "when determining whether to award profits the Court should consider "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Banjo Buddies* also concludes that "there is no requirement that the defendant's profits approximate the plaintiff's damages," but

5

quoted the Second Circuit in *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F. 2d 1532, 1537 (2d Cir. 1992) that "an accounting of the infringer's profits is available if the defendant is unjustly enriched, if the plaintiff sustained damages, or if an accounting is necessary to deter infringement. These rationales are stated disjunctively; any one will do."

  C. <u>Fed. R. Civ. P. 56(d)and (h)</u>

Federal Rule of Civil Procedure 56(d) and (h) state, in relevant part, that

(d) When Facts Are Unavailable to the Nonmovant**.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

**III.** **<u>DISCUSSION</u>**

The Court, out of an abundance of caution, will allow Plaintiff an opportunity to conduct limited discovery pursuant to the declaration of Plaintiff's attorney. (See ECF Doc. 16-1,

certification of Charles Quinn). However, the Court notes that from the outset Plaintiff has had nothing more than suspicion that confusion occurred, or that clients were diverted from Plaintiff to Defendant. Thus far, there is nothing on which to ground that bare suspicion other than Mr. Savite's anecdotal evidence. Plaintiff is thus far unable to allege any damage or injury, and instead wishes to rely on the Court's intervention to commence discovery in the hope that they can discover some facts on which to pin their prayer for relief. Plaintiff has shown nothing thus far to counter Defendant's sworn affidavit that "between July, 2010 and October 26, 2010 representatives of the Group contacted less than twelve individuals," and that none of them appeared to be confused, or to believe that they were being solicited by anyone other than Morgan Stanley Smith Barney. Moreover, it appears that none of them became Defendant's client. (Second Cerification of Brian J. Burns, ECF Doc. 13-3). Although there is nothing to suggest that discovery would suddenly reveal anything to the contrary, the Court still finds that denying Plaintiff the opportunity could inadvertently lead to an injustice.

     That having been said, it is important to remember the posture in which this case first came before the Court. Plaintiff's original prayer for relief centered around its demand that Defendant be "temporarily restrained and preliminarily and permanently enjoined from infringing Plaintiff's The Sparta Group service mark and trade name, and from directly or indirectly using The Sparta Group, or any similar mark, word, or name that is likely to cause confusion, mistake or to deceive the public as to the origin or sponsorship of the services of Plaintiff."(ECF Doc.1, Complaint, ¶ 23(a)). Plaintiff next requested that Defendant "deliver" or "impound...any labels, signs, prints, packages and advertisements." These demands were made on October 25, 2010. Four days later, on October 29, 2010, Plaintiff's attorney notified the Court that "the Sparta Group

has obtained all it sought in its application for preliminary injunctive relief, and, therefore, withdraws that motion." Plaintiff's third demand in the original complaint was for an accounting of "any and all profits derived from the sale of any products or services under the mark or name The Sparta Group." On November 9, 2010 Brian J. Burns, Defendant's employee, certified under penalty of perjury that "representatives of the group contacted less than twelve individuals," and (ECF Doc. 13-3,¶ 4) and that "none of the business pitches made using the name 'Sparta Group at Morgan Stanley Smith Barney' proved fruitful, as none of the individuals mentioned in paragraph 4 above decided to do business or obtain services from MSSB prior to the October 26 name change of the Group. Since that date, all solicitations have been made using the Group's new name." The Court finds that this certification essentially satisfied Plaintiff's request for an accounting of profits, and also satisfied their request that "defendant be ordered to pay all damages"(Complaint, ¶ 23(d)), since it is clear that if the Burns certification is to be believed, there were none. Whatever nefarious motivation Defendant may have had, and whether the adoption of the Sparta name after Mr. Reese's summer internship with Plaintiff proves that no good deed goes unpunished, there has been no showing or hint of damages. The Court can only hope that Plaintiff's request to obtain discovery is based on something other than a hunch, despite the fact that Plaintiff has not set forth reasons why Mr. Burns should not have been believed.

   Although it is premature at this point for the Court to analyze the facts prior to discovery, the Court notes that the *Banjo Buddies* Court instructed that District Courts are to analyze several factors under similar circumstances. The Court stated "when determining whether to award profits the Court should consider "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay

by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." Although the Court will apply the factors at the appropriate time, the threshold question is whether there were profits to be awarded, since "a markholder is only entitled to those profits attributable to the unlawful use of its mark." *Texas Pig Stands, Inc. v. Hard Rock Cafe Intern., Inc.*, 951 F.2d 684, 696 (C.A.5 (Tex.),1992). It is on this issue that the Court finds that limited discovery is required.

  The Lanham Act specifically describes an award of damages to be "subject to the principles of equity," and further that attorney's fees may be awarded in "exceptional cases." The Court notes, without deciding, that this appears not to be such a case. Although "wilful infringement qualifies as an 'exceptional case,'" *See Securacomm Consulting, Inc. v. Securacom Inc.,* 224 F.3d 273, 279–282 (3d Cir.2000), the Court finds that although even if there is a likelihood of willfulness, that is not enough to find that this is an extraordinary case, especially in light of the fact that Defendant, within 22 days of receiving the cease and desist letter, and within four days of the filing of Plaintiff's complaint, had fully complied with the gravaman of Plaintiff's demand by changing its name and destroying its promotional materials. Had Defendant unduly delayed or contested Plaintiff's request for injunctive relief, this might have become an exceptional case, but in the absence of those factors, it appears not to be. If discovery leads the Court to other findings, that will be duly noted. To award attorney's fees for a Plaintiff that has unnecessarily prolonged litigation would be inequitable, and the Court would decline to do so. Nonetheless, equity requires that Plaintiff be given a chance to develop a factual record to support its claim of injury.

IV.     **CONCLUSION**

For the foregoing reasons, the Court **reserves** decision on Plaintiff's and Defendant's motions for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff's motion pursuant to Fed. R. Civ. P. 56(d) is **granted.** An appropriate order follows this opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date: May  11 , 2011
cc: Counsel of Record
Hon. Joseph A. Dickson, U.S.M.J
File